IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                    No. 1:15-cr-00902-002 RB

JESUS DOMINGO MARTINEZ-CRUZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Jesus Domingo Martinez-Cruz's Objections to the Presentence Investigation Report. (Doc. 48.) Having considered the submissions of counsel and relevant law, the Court finds that Defendant's objections should be overruled.

**I.    Background**

On March 7, 2014, in a prior case, United States Border Patrol agents apprehended Mr. Martinez-Cruz with six other individuals and 186 kilograms of marijuana near Cotton City, New Mexico. (*See United States v. Martinez-Cruz*, 2:14cr01577-006 NF.) Mr. Martinez-Cruz admitted that he and his co-defendants had worked together to transport backpacks filled with marijuana from Mexico to the United States and they planned to turn the marijuana over to another person in the United States. (2:14cr1577-006, Doc. 61.) On May 8, 2014, Mr. Martinez-Cruz pleaded guilty pursuant to a plea agreement to an Information charging violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute 50 kilograms and more of marijuana, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (*Id.*) On July 29, 2014, Mr. Martinez-Cruz

was sentenced to eight months imprisonment. (2:14cr1577-006, Doc. 89.)  After he completed his sentence, Mr. Martinez-Cruz was deported to Mexico on November 8, 2014.

On January 6, 2015, United States Border Patrol agents apprehended Mr. Martinez-Cruz and two other individuals hiding under brush approximately half a mile north of Interstate 10 near Separ, New Mexico. (Doc. 1.)  Mr. Martinez-Cruz and the other men admitted to being in the United States without the proper documentation. (*Id.*)  Mr. Martinez-Cruz and the others also admitted to hiding three backpacks containing marijuana on the south side of Interstate 10. (*Id.*)  Agents located the backpacks, which contained a total of 69 kilograms of marijuana. (*Id.*)  All three men stated that they were to be paid between $1,400 and $2,000. (*Id.*)

The Grand Jury charged Mr. Martinez-Cruz with (1) conspiracy to possess with intent to distribute 50 kilograms and more of marijuana contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) in violation of 21 U.S.C. § 846; (2) possession with intent to distribute 50 kilograms and more of marijuana and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and, (3) reentry after deportation in violation of 8 U.S.C. §§ 1326(a) and (b). (Doc. 21.)  On April 2, 2015, Mr. Martinez-Cruz pleaded guilty to all three counts of the Indictment. (Doc. 35.)

The Presentence Investigation Report grouped the two marijuana-related counts pursuant to U.S.S.G. § 3D1.2(d) and assessed a base offense level of 20 for those counts.  After giving Mr. Martinez-Cruz credit for being a minimal participant, the Presentence Investigation Report calculated the adjusted offense level for the two counts related to the marijuana at 16.  As to the charge for reentry after deportation, the Presentence Investigation Report assessed a base offense level of 8 and applied a 12-level upward adjustment pursuant to U.S.S.G. § 2L1.2(b)(1)(B). Accordingly, the Presentence Investigation Report calculated the adjusted offense level for the

reentry count at 20. The Presentence Investigation Report determined that the marijuana-related counts did not group with the reentry count, and applied a 2-level upward adjustment pursuant to U.S.S.G. § 3D1.4(a). The Presentence Investigation Report credited Mr. Martinez-Cruz with 3 points for acceptance of responsibility and calculated his total offense level as 19. Due to his prior conviction for conspiracy to possess with intent to distribute 50 kilograms and more of marijuana, Mr. Martinez-Cruz was placed in criminal history category II. A total offense level of 19 and a criminal history category II results in an advisory sentencing guideline range of 33–41 months.

In his Objections, Mr. Martinez-Cruz contends that (1) he is not subject to the 12-level increase under U.S.S.G. § 2L1.2(b)(1)(B) because conspiracy under 21 U.S.C. § 846 does not accord with a generic definition of conspiracy and his prior conviction is not a match for the generic definition of a drug trafficking offense; and (2) he is not subject to the 2-level increase under U.S.S.G. § 3D1.4 as the marijuana-related counts should be grouped with the reentry count. (Doc. 48.) The United States responds that his prior conviction qualifies as a drug trafficking offense within the meaning of Section 2L1.2(b)(1)(B), the marijuana-related counts are distinct from the reentry count, and an upward departure is warranted if the Court concludes that the prior conviction is not a drug trafficking offense. (Doc. 59.)

**II.     Discussion**

    **A. The prior conviction is a drug trafficking offense under U.S.S.G. § 2L1.2(b)(1)(B)**

Mr. Martinez-Cruz asserts that his prior conviction for conspiracy in violation of 21 U.S.C. § 846 is not a "drug trafficking offense" meriting a 12-level increase under U.S.S.G. § 2L1.2(b)(1)(B). The Tenth Circuit has explained that "U.S.S.G. § 2L1.2 is the Sentencing Guidelines provision applicable to defendants who illegally reenter the country in violation of 8

U.S.C. § 1326.  The sentencing scheme embodied in § 2L1.2 imposes, via enhancements to the defendant's base offense level, more severe punishment for defendants who have committed serious prior crimes." *United States v. Rosales-Garcia*, 667 F.3d 1348, 1349 (10th Cir. 2012).  A conviction for a felony drug trafficking offense is enumerated as one such predicate offense.  *Id*.; U.S.S.G. § 2L1.2 (b)(1)(A–B).

Application Note 1 for Section 2L1.2 defines a "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 2L1.2, cmt.n.1(B)(iv).  Application Note 5 for Section 2L1.2 provides that "[p]rior convictions of offenses counted under subsection (b)(1) [enumerating the predicate offenses, including 'drug trafficking offenses'] include the offenses of aiding and abetting, conspiring*,* and attempting, to commit such offenses."  U.S.S.G. § 2L1.2, cmt. n.5.  The application notes of the Guidelines are authoritative, unless they are plainly erroneous, inconsistent with the guideline they interpret, or contrary to the constitution or federal law.  *United States v. Morris*, 562 F.3d 1131, 1135 (10th Cir. 2009).  Under the plain language of the application notes, Mr. Martinez-Cruz's prior conviction for conspiracy to possess with intent to distribute 50 kilograms and more of marijuana in violation of 21 U.S.C. § 846 is a drug trafficking offense for purposes of Section 2L1.2(b)(1)(B).

Notwithstanding this plain language, Mr. Martinez-Cruz asserts that his prior conspiracy conviction is not encompassed by the word "conspiring" as used in Application Note 5 because 21 U.S.C. § 846 does not require proof of "any overt acts in furtherance of the conspiracy." *United States v. Shabani*, 513 U.S. 10, 15 (1994).  In support of this argument, Mr. Martinez-

Cruz relies on *United States v. Garcia-Santana*, 774 F.3d 528 (9th Cir. 2014). In *Garcia-Santana*, the Ninth Circuit considered the appropriate treatment of a conviction for "conspiracy to commit the crime of burglary" in violation of Nev. Rev. Stat. §§ 199.480, 205.060(1) under a section of the Immigration and Nationality Act. In that context, the Ninth Circuit defined the generic offense of conspiracy for purposes of 8 U.S.C. § 1101(a)(43)(U) of the Immigration and Nationality Act as requiring an overt act. *Garcia-Santana*, 774 F.3d at 534. It bears underscoring that *Garcia-Santana* differed significantly from the instant case because it interpreted a state statute under the Immigration and Nationality Act rather than the federal drug conspiracy statute under Section 2L1.2(b)(1)(B).

The Ninth Circuit has recognized this distinction and squarely rejected Mr. Martinez-Cruz's argument. *See United States v. Rivera-Constantino*, 2015 WL 4925444, *2 (9th Cir. Aug. 19, 2015). Therein, the Ninth Circuit observed that "[i]nterpreting a term used in the Guidelines based on its 'generic definition'—the approach urged by [the defendant] and discussed in *Taylor v. United States*, 495 U.S. 575 (1990)—represents a useful tool for divining legislative intent." *Id*. "But when the plain meaning of a term is readily apparent from the text, context, and structure of the relevant Guidelines provision and commentary, that meaning is dispositive and there is no need to rely on the 'generic definition' framework." *Id*.

In *Rivera-Constantino*, the Ninth Circuit emphasized that "it *is* readily apparent that the Sentencing Commission intended Section 2L1.2(b)(1) to encompass as predicate offenses federal drug conspiracy convictions that do not require proof of an overt act." *Id*. (emphasis supplied). *Rivera-Constantino*, 2015 WL 4925444, *2. "To hold otherwise would be to conclude that the Sentencing Commission intended to exclude federal drug trafficking conspiracy offenses when it used the word 'conspiring' to modify the phrase 'drug trafficking offenses.' Such a result would

be . . . downright absurd." *Id*. The Ninth Circuit elaborated: "Why would the Sentencing Commission intend to exclude from the term 'drug trafficking offenses' a federal conviction for a drug trafficking offense under federal law?" *Id*. "Congress has decided not to require an overt act as an element of a federal drug conspiracy, and we have no reason to conclude that the Sentencing Commission intended to abrogate that decision." *Id*. "Indeed, to adopt such an interpretation would run counter to basic notions of common sense." *Id*. The Court finds the reasoning of the Ninth Circuit in *Rivera-Constantino* to be persuasive and rejects the argument of Mr. Martinez-Cruz that an overt act is required for a conspiracy to qualify as a drug trafficking offense within the meaning of Section 2L1.2(b)(1)(B).

In addition to his overt act argument, Mr. Martinez-Cruz contends that his prior conviction for conspiracy to possess with intent to distribute more than 50 kilograms of marijuana under 21 U.S.C. § 846 does not constitute a "drug trafficking offense" for purposes of Section 2L1.2(b)(1)(B) because 21 U.S.C. § 841 prohibits non-remunerative distribution. In support of this argument, Mr. Martinez-Cruz relies on *Moncrieffe v. Holder*, 133 S.Ct. 1678 (2013). The defendant in *Moncrieffe* was arrested while in possession of 1.3 grams of marijuana, pleaded guilty in a Georgia court to possession of marijuana with intent to distribute under Ga. Code § 16-13-30(j)(1), and was sentenced to five years of probation. *Id*. In *Moncrieffe*, the Supreme Court held that a conviction under the Georgia statute for marijuana distribution does not qualify as a drug trafficking aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B) unless the offense involves either remuneration or more than a small amount of marijuana. *Moncrieffe*, 133 S.Ct. at 1693–94.

Mr. Martinez-Cruz's argument is unpersuasive for at least three reasons. First, in *Moncreiffe* the Supreme Court expressly distinguished the Georgia statute from federal

prosecutions under 21 U.S.C. § 841. *Id.* at 1687–89. Second, *Moncreiffe* interpreted Section 1101(a)(43)(B) of the Immigration and Nationality Act and not Section 2L1.2(b)(1)(B) of the Sentencing Guidelines. Thus, *Moncreiffe* is inapplicable to the case *sub judice*. Third, an offense does not require proof of remuneration or commercial activity in order to qualify as a drug trafficking offense under Section 2L1.2(b)(1). *See United States v. Martinez-Lugo*, 782 F.3d 198, 204-205 (5th Cir. 2015), *petition for cert. filed* (June, 23 2015) (No. 14–10355).

Mr. Martinez-Cruz claims that the Honorable J. Thomas Marten, United States District Judge "recently applied that same analysis and concluded the 21 U.S.C. § 841(a)(1) is a categorical mismatch with a drug trafficking offense under Section 2L1.1." (Doc. 48 at 13.) The Court has reviewed the transcript of the sentencing hearing and respectfully disagrees with Mr. Martinez-Cruz's characterization of Judge Marten's ruling. In *United States v. Dominguez-Rodriguez*, 2:15-cr-0886-JTM, the defendant waived his right to appeal in a plea agreement. At sentencing, Judge Marten stated "it's not that I necessarily think that either side has the better side of this case but I think the issue does need to be decided and as a result of that, I am going to adopt the position that's been asserted by Mr. Dominguez in this case and I strongly encourage the Government to appeal so that we can get this resolved . . . ." (Tr. at 9.) Judge Marten's ruling was not a ringing endorsement of the defendant's position so much as an expedient way to obtain appellate review of the issue. Unlike Mr. Dominguez-Rodriguez, Mr. Martinez-Cruz did not accept a plea agreement in this case. As Mr. Martinez-Cruz pleaded guilty to the Indictment, he did not waive his right to appeal. He is free to appeal the decision in this case, and the Court encourages him to do so.

In sum, Mr. Martinez-Cruz's arguments are as creative as they are legally unsupported. As the prior conviction qualifies as a drug trafficking offense, the Government's request for an

7

upward variance is a moot point. The Presentence Investigation Report correctly determined that Mr. Martinez-Cruz's prior conviction for conspiracy in violation of 21 U.S.C. § 846 is a "drug trafficking offense" meriting a 12-level increase under U.S.S.G. § 2L1.2(b)(1)(B).

### B. A 2-level increase is proper under U.S.S.G. § 3D1.4

Mr. Martinez-Cruz contends that the Presentence Investigation Report improperly applied a 2-level increase under U.S.S.G. § 3D1.4 because it should have grouped the marijuana-related counts with the reentry count under U.S.S.G. § 3D1.2. To be sure, U.S.S.G. § 3D1.1 provides that when a defendant is convicted of more than one count, the district court should group closely related counts and then determine a combined offense level for all of the groups. *Id.* In this case, the Presentence Investigation Report grouped the marijuana related counts together with each other but separately from the reentry count.

Under U.S.S.G. § 3D1.2, closely related counts are those that involve "substantially the same harm." Counts involve "substantially the same harm" when, *inter alia*, they "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. § 3D1.2(b). For offenses in which there are no identifiable victims, such as drug or immigration offenses, where society at large is the victim, Application Note 2 to Section 3D1.2 provides that the "victim" is the societal interest that is harmed. U.S.S.G. § 3D1.2, cmt. n.2. Notably, Application Note 2 states that "where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed." *Id.*

In this case, the societal interests harmed by the marijuana-related counts are not related to the societal interests harmed by the reentry count so as to require that they be grouped under

U.S.S.G. § 3D1.2. "The illegal reentry statute is designed to control immigration and protect national security by precluding the reentry of aliens with serious criminal records who may commit further offenses upon their illegal return to this country." *See United States v. Martinez-Narvaez*, 328 Fed. Appx. 309, 310 (5th Cir. 2009). Conversely, "[t]he overarching aim of the [Controlled Substances Act] is to combat drug abuse and to control the legitimate and illegitimate traffic of controlled substances." *United States v. Tobin*, 676 F.3d 1264, 1275 (11th Cir. 2012). Clearly, drug laws can be violated by individuals regardless of their immigration status and the drug laws are enforced for reasons unrelated to immigration.

Mr. Martinez-Cruz claims that his primary goal was to bring marijuana into the United States and "[t]he fact that he did so in violation of immigration laws is simply incidental." (Doc. 48 at 21.) According to Mr. Martinez-Cruz he intended "to return to Mexico after he had made his delivery so he could be paid." (*Id.*) The Court notes that Mr. Martinez-Cruz was apprehended a half a mile north of Interstate 10, more than twenty miles from the United States/Mexico border, after he cached the marijuana on the south side of the interstate, which belies his claim that he intended to return to Mexico. However, regardless of when he intended to return to Mexico, it is undisputed that Mr. Martinez-Cruz reentered the United States after being deported and his co-defendants transported a considerable quantity of marijuana for more than twenty miles within the United States. Mr. Martinez-Cruz could have committed the crime of reentry without committing the marijuana-related crimes and vice versa. Under the circumstances of this case, the marijuana-related counts and the reentry count do not involve substantially the same harm. Thus, the Presentence Investigation Report correctly determined that the marijuana-related counts are not closely related to the reentry count for purposes of U.S.S.G. § 3D1.2.

### III.     Conclusion

The Presentence Investigation Report correctly applied a 12-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(B) and properly applied a 2-level increase under U.S.S.G. § 3D1.4.  The sentencing hearing will be reconvened as the calendar of the Court permits.

**THEREFORE,**

**IT IS ORDERED** that Mr. Martinez-Cruz's Objections to the Presentence Investigation Report, (Doc. 48), are **OVERRULED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**